not itself exercise any right thereunder, and did not mislead plaintiff in any way.

The complaint must therefore be dismissed, with costs. Findings may be prepared accordingly.

---

(158 Misc. Rep. 196.)

## DOUGLASS v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Third Department.    July 8, 1913.)

MASTER AND SERVANT (§ 279*)—INJURIES TO SERVANT—CAUSE OF INJURIES.

In an action for the death of a freight conductor, killed by a rear-end collision, plaintiff was entitled to recover against defendant railroad company upon showing that the collision was due to the negligence of one of three vice principals, although not showing which one.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975, 978–980; Dec. Dig. § 279.*]

Smith, P. J., and Woodward, J., dissenting.

Appeal from Trial Term, Schenectady County.

Action by Satie L. Douglass, administratrix of George H. Waters, deceased, against the New York Central & Hudson River Railroad Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD and WOODWARD, JJ.

Visscher, Whalen & Austin, of Albany (Robert E. Whalen, of Albany, of counsel), for appellant.

Homer J. Borst, of Amsterdam, for respondent.

JOHN M. KELLOGG, J.   The plaintiff's intestate met his death in a rear-end collision on the defendant's road. The evidence as to the defendant's negligence and the intestate's freedom from contributory negligence is satisfactory. The collision was caused by the negligence of a signalman at Crawford's Grade, or of a signalman at Rotterdam Junction, or of the engineer upon the engine which collided with the intestate's train. Perhaps the negligence of more than one of these vice principals brought about the result. The court refused to charge, at the defendant's request, that the jury must be satisfied which one of these vice principals committed the negligent act and caused the injury. The court charged, in substance, that a recovery could be had if either one committed the negligent act, and that it was not necessary for all of the jurors to agree as to which one of the vice principals caused the injury. If the defendant is right in its contention, it would be almost impossible to recover in this case. It is clear that the defendant is liable for the negligence of either of the three persons, but it is very difficult from the record to determine which one caused the injury. If a defendant negligently pulls the wrong lever and thereby causes an injury, and some witnesses think he pulled it with the right hand, and others think he pulled it with the left hand, and others think that his foot

caused the lever to move, it is entirely immaterial which is right, so long as it is clearly established that the negligent act of the defendant caused the injury.

I favor an affirmance.

LYON and HOWARD, JJ., concur.   SMITH, P. J., dissents.

WOODWARD, J. (dissenting).   On the 27th day of January, 1912, trains scheduled to run upon the main line of the defendant's railroad were detoured, owing to a wreck upon the road, and were passing over the tracks of the West Shore road.   To give right of way to passenger trains, a fast freight train, No. 3,107, bound west, had been brought to a standstill directly opposite the signal tower R. J. at Rotterdam Junction.   Shortly before the accident resulting in the death of plaintiff's intestate this train had been released and had gone forward on its journey.   The intestate was the conductor of freight train No. 3,105, a train consisting of about 40 cars, which had, under cautionary orders from the block signalman at Crawford's Grade, run into the yard at Rotterdam Junction, and had come to a standstill about 500 feet inside the yard limits; the train being en route west.   The intestate was in the caboose of this train, and the last seen of him alive was while he was standing at the desk in the caboose at the east end of the train.   Train No. 3,010, proceeding westerly, was given a clear signal by the towerman at Crawford's Grade, which indicated that this train had the right of way with a clear track to Rotterdam Junction, though it appears as a matter of fact that train 3,105 was occupying the track inside the yards at Rotterdam Junction.   Crawford's Grade signal tower appears to have been about 3 miles from Rotterdam Junction, and train 3,010 continued west to a point about 3000 feet east of Rotterdam Junction, where a yellow signal was displayed under the operation of the signalman at Rotterdam Junction tower, which under the rules, required the engineer of train 3,010 to proceed cautiously and be prepared to stop.   He had already passed two torpedoes, which admonished him to slow down and bring his train under control, and he had, it appears, brought his train down from 15 to 20 miles an hour to 10 or 12 miles an hour.   At the easterly yard limit of Rotterdam Junction there was a signal requiring the engineer to slow down to 8 miles an hour and be prepared to stop his train within the range of his vision, and there is nothing in the case to which our attention is called which tends to overcome the presumption that these signals were seen and obeyed by the engineer of train 3,010.   While the latter train was rounding a sharp curve the forward brakeman of train 3,010 called to the engineer that there was a flagman ahead, also a rear end, which appeared some 500 feet ahead, and almost instantly the collision occurred, resulting in the death of Conductor Waters, plaintiff's intestate.

Signalman Smith of the Rotterdam Junction tower testified in behalf of the plaintiff that he signaled by telegraph to the man at the Crawford Grade tower that train 3,107 had cleared, but that he made no such report as to train 3,105; but the man at Crawford's Grade testifies as plaintiff's witness that he received word by telegraph from Smith that both trains had cleared, and that in consequence he gave

no caution card, but rather a clear signal, to Engineer Frayer of train 3,010. If we assume that one of these signalmen made a·mistake, that either Smith telegraphed that both trains had cleared, or that the towerman at Crawford's Grade misunderstood Smith's telegram, and thought both trains were reported out of the block at Rotterdam Junction, it is not entirely clear that this error was the proximate cause of the accident. Train 3,105 was inside the yard limits, and was protected by torpedoes exploded upon the track and a cautionary signal 3,000 feet east of the yard limits, with a second signal requiring the train to slow down to 8 miles an hour and to be prepared to stop within the range of the engineer's vision, so that, if there was error at the time train 3,010 passed Crawford's Grade, the evidence warrants the conclusion that the train was in control on entering the yard at Rotterdam Junction, and the accident appears to have been due to the fact that train 3,105 came to a standstill immediately after passing around a sharp curve, and at a point where it was impossible to stop the oncoming train soon enough to avoid the accident, although such train was in control and could have been stopped within the reasonable range of the engineer's vision, which, fairly construed, means that the train should have been in such control as to be stopped in time to avert an accident where the usual precautions had been taken to protect the rear end of the train, which is done by sending out a flagman a sufficient distance to give warning. The undisputed evidence is that train 3,105 had been inside the yard for at least 30 minutes, and this would certainly give ample opportunity for the flagman to go out far enough to signal the oncoming train in time to avert any possible accident, yet the evidence indicates that the flagman and the rear end of train 3,105 were discovered practically at the same moment, and that the exposed train was only about 500 feet away at the time of this discovery. Plaintiff's intestate was the conductor.of train 3,105. He was in physical control or direction of the movements of the train, and was, under the provisions of section 42a of the Railroad Law, a vice principal of the defendant; and, had the accident resulted in the death of the engineer or any of the employés engaged in the operation of train 3,010, his negligence, if any, would have been the negligence of the defendant, and yet we find no evidence in this case to show that plaintiff's intestate exercised any reasonable degree of care to protect his train. He was in a position to know that his train had come to a standstill directly after passing around a sharp curve, for he was in the rear end of the train. He knew, or was charged with the duty of knowing, that his train was upon the main track, and he was operating it over a strange railroad under circumstances which demanded more than ordinary care, and yet there is not a particle of evidence that he had taken any precautions, and the only fair inference from the evidence is that the flagman was out only a few hundred feet from the rear end of the train, which was hidden from view by the curve. It was his duty to see that his train was protected, that trains which might be following him were not exposed to any unnecessary dangers by his position upon the main line, and the evidence does not disclose that this vice principal was doing anything of the kind, and the jury

was not justified in finding a verdict for the plaintiff under such circumstances.

The evidence did not disclose facts sufficient to show which one of the three vice principals was responsible for the accident, although the court charged that both signalmen and the engineer of train 3,010 were, under the statute, such vice principals; and I am of the opinion that the court should have granted the defendant's request to instruct the jury that:

"In order for plaintiff to recover at all, they must first be satisfied of the precise person whose negligence, if any, caused the accident."

It can hardly be that a jury would be justified in finding the defendant negligent when a portion of the jury thought the negligence of the Crawford Grade signalman was the proximate cause, while others attributed the accident to the negligence of Smith, while still others concluded that it was due to the negligence of the engineer of train 3,010, and yet others might have believed that it was caused by the negligence of plaintiff's intestate in not taking proper precautions under the circumstances of the case. It is still necessary, I think, to point out definitely the negligence of the master, by showing that some one, for whose conduct the master is liable, has been guilty of an act of negligence which has been the proximate cause of the accident from which the damages arise.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event.